IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

TYRONE WELCH                                          PLAINTIFF

        v.              Civil No. 12-5137

OFFICER CHAD MORGAN and
MAJOR RANDALL DENZER                                  DEFENDANTS


O R D E R

    Now on this 26th day of August, 2013, come on for
consideration the following:

    *    defendants' **Motion For Summary Judgment** (document #23);

    *    the **Report And Recommendation Of The Magistrate Judge**
(document #43); and

    *    **Defendants' Objections To The Report And Recommendation
Of The Honorable Magistrate Judge** (document #44),
and the Court, being well and sufficiently advised, finds and
orders as follows:

    1.   Plaintiff Tyrone Welch brought this claim pursuant to **42
U.S.C. § 1983**, alleging that he was subjected to excessive force
by defendant Officer Chad Morgan while he was a pretrial detainee
at Washington County Detention Center on June 5, 2012.  Welch was
being held in a pod with multiple other prisoners.  He had been
pressing a call button in the pod, trying to get medical
attention, and Morgan came to the door in response.  At the same
time, Welch and another prisoner got into an verbal altercation,

and Morgan directed both prisoners to step outside the pod, where the events in suit took place.  These events were recorded on a video camera.

2.   In response to a motion to amend, the Magistrate Judge later added Randall Denzer, Jail Administrator, as a defendant in lieu of Washington County Detention Center, which is not a "person" subject to suit under **§ 1983**.

3.   Defendants moved for summary judgment, contending that the video recording of the incident in suit demonstrates conclusively that Morgan did not use excessive force, and that Welch has stated no claim against Denzer.

4.   Magistrate Judge Erin L. Setser conducted an evidentiary hearing to allow Welch to respond to the motion, and then issued the Report And Recommendation now under consideration.  She reported that the video recording could be interpreted as support for the position of either Welch or Morgan, and that a genuine issue of material fact existed which precluded summary judgment on Welch's claim of excessive force against Morgan.  In light of this fact issue, Magistrate Judge Setser reported that she could not determine the issue of qualified immunity as to Morgan.  She recommended that the motion for summary judgment be denied as to Welch's claim against Morgan.

Magistrate Judge Setser further reported that there were no facts which would support any claim against Denzer, and

recommended that the motion be granted as to Welch's claim against Denzer.

5.   Morgan objects that the video recording clearly supports his defense that he reasonably believed that he was in jeopardy, especially since the pod door was still open at the time of the occurrence, which would leave him "vulnerable to potential attack by dozens of inmates."  He cites **Scott v. Harris, 550 U.S. 372, 380 (2007),** for the proposition that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."

The Court has reviewed the video recording in question, and agrees with Magistrate Judge Setser that reasonable jurors could differ in their interpretation of it, seeing it either as evidence in favor of Morgan, or evidence in favor of Welch.  It does not "blatantly contradict" Welch's version of events.  That being the case, there is a disputed issue of material fact on Welch's claim of excessive force, and this objection is without merit.

6.   Morgan next contends that even if there is a disputed issue of material fact on the excessive force claim he is entitled to summary judgment on the issue of qualified immunity.

Qualified immunity is a doctrine that has evolved to protect government officials from liability for civil damages where their

conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." **Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).** The doctrine "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." **Messerschmidt v. Millender, 132 S.Ct. 1235, 1244 (2012).** Whether qualified immunity exists in a given situation is a question of law, not fact, **McClendon v. Story County Sheriff's Office, 403 F.3d 510, 515 (8th Cir. 2005),** although there may be disputed issues of fact about what that situation is.

In **Saucier v. Katz, 533 U.S. 194 (2001),** the Supreme Court mandated a two-step inquiry for analyzing qualified immunity claims, an inquiry which is still useful and desirable although it is no longer mandated in every case, **Pearson v. Callahan, 555 U.S. 223 (2009):**

> A court required to rule upon the qualified immunity issue must consider, then, this threshold question:  Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry. . . .
> If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.  This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as  a broad general proposition . . . .

-4-

**Saucier**, *id.*, **533 U.S. at 201.**

Fleshing out the meaning of "clearly established," the Court in **Saucier** explained that "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. . . . If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id.* **at 202.**

7.   It is with the second question in the **Saucier** analysis that the Court is now concerned, having determined that a genuine issue of material fact exists as to the first.   The second question might be formulated thus:  Would it have been clear to a reasonable law enforcement officer, at the time of the occurrence, that Morgan's takedown of a pretrial detainee who was upset and yelling because he was in pain and angry at another prisoner, and who raised his arm over his head in the face of the officer, was a violation of the constitutional prohibition against the use of excessive force?

In order to answer this question it is necessary to ask another:  what constitutes the use of excessive force?  Excessive force claims brought by pretrial detainees are analyzed under an "objective reasonableness" standard grounded in the Fifth and Fourteenth Amendments. **Andrews v. Neer**, **253 F.3d 1052, 1060 (8th**

Cir. 2001).   Because pretrial detainees have not been convicted, they cannot be subjected to conditions of confinement which amount to punishment.  **Bell v. Wolfish**, **441 U.S. 520, 535 (1979)**.  This is not to say, however, that the officials who guard them are without power to maintain order and prevent mayhem.  Steps taken to maintain order and security, and restraints reasonably related to institutional security do not, without more, amount to unconstitutional punishment.  *Id.* **at 540**.

In **Graham v. Connor**, **490 U.S. 386, 396-97 (1989),** where an "objective reasonableness" standard was used to analyze a Fourth Amendment claim of excessive force during an arrest, the Court recognized that "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation."

8.  The Court has reviewed the transcript of the evidentiary hearing in this matter as well as the video recording.  Welch admitted at the hearing that he was upset because he felt his medical needs were not getting attention.  He testified that he was hurting and yelling.  He also testified that he and another prisoner were having words, and were riled up at each other.  The video recording shows that after the two prisoners stepped out into the hallway, and before the door to the pod closed (prisoners

can be seen peering out the door), Welch raised one arm over his head in the direction of Morgan.  At this point Morgan grabbed Welch, threw him against the wall, and then threw him on the floor.

Under these circumstances, the Court finds that it would not have been clear to a reasonable law enforcement officer in Morgan's position that a takedown of Welch was a violation of the constitutional prohibition against the use of excessive force. Even giving Welch the benefit of every doubt, the evidence still supports three key findings:

\*     Morgan was dealing with a potentially volatile situation (volatile because of Welch's anger at the other prisoner);

\*     other prisoners from the Pod could have come out into the hallway to complicate the situation; and

\*     Welch raised his arm over his head in front of Morgan.

Morgan had to make a split-second decision on how to handle this situation, which was tense and at best uncertain.  While he may have been mistaken about what Welch intended by raising his arm, his judgment was not unreasonable, and is, therefore, protected by the doctrine of qualified immunity.  Morgan's objection on the basis of qualified immunity will be sustained.

9.  Morgan also objects that the Magistrate Judge should not have received into evidence and considered certain reports involving other use of force incidents by Morgan, those being

irrelevant.  He argues that the documents involve only allegations of the use of force, not proof thereof, and constitute inadmissible character evidence.

Because the Court has resolved the issues in this case favorably to Morgan on a different basis, it need not address this objection, which will be deemed moot.

**IT IS THEREFORE ORDERED** that **Defendants' Objections To The Report And Recommendation Of The Honorable Magistrate Judge** (document #44) are **sustained in part and overruled in part**, as set forth in detail in this Order.

**IT IS FURTHER ORDERED** that the **Report And Recommendation Of The Magistrate Judge** (document #43) is **adopted in part and not adopted in part**.

The R&R is **adopted** insofar as it recommends dismissal of Welch's claims against defendant Denzer, and **not adopted** insofar as it recommends denial of Morgan's motion for summary judgment.

**IT IS FURTHER ORDERED** that defendants' **Motion For Summary Judgment** (document #23) is **granted**, and this matter is **dismissed with prejudice**.

**IT IS SO ORDERED.**

        **/s/ Jimm Larry Hendren**
        **JIMM LARRY HENDREN**
        **UNITED STATES DISTRICT JUDGE**